IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE ex rel. HERBERT H. SLATERY III, in his official capacity as the Attorney General and Reporter of Tennessee and ROBERT J. MARTINEAU, JR., Commissioner of the Tennessee Department of Environment and Conservation,<br><br>     Plaintiffs,<br><br>and<br><br>TENNESSEE CLEAN WATER NETWORK and TENNESSEE SCENIC RIVERS ASSOCIATION,<br><br>     Plaintiff-Intervenors,<br><br>v.<br><br>TENNESSEE VALLEY AUTHORITY,<br><br>     Defendant. | Case No.: 3:17-cv-01139<br>Chief Judge Waverly Crenshaw |

**PLAINTIFFS' REPLY TO DEFENDANT'S CONSOLIDATED BRIEF IN OPPOSITION TO PLAINTIFFS' AND INTERVENORS' MOTIONS TO REMAND**

Plaintiffs, the State of Tennessee, ex rel. the Attorney General and Reporter and the Commissioner of the Tennessee Department of Environment and Conservation (TDEC) (collectively the State), by and through counsel and pursuant to the parties' Stipulation and Proposed Order Extending Briefing Schedule (Doc. No. 12, Attch. 1) filed on September 11, 2017, respectfully submit this reply in support of their Motion to Remand (Doc. No. 12).

### A. Defendant's Arguments Regarding 28 U.S.C. § 1442 are Irrelevant to the Issue of Defendant's Failure to Comply with the Timing Requirements for Removal.

First, Defendant's response includes an immaterial discussion of 28 U.S.C. § 1442. Both sections 1441 and 1442 are jurisdictional statutes, identifying specific circumstances in which a defendant may remove a matter from state to federal court. Section 1442, also called the federal officer or agency removal statute, simply allows a qualifying federal entity to remove a potentially otherwise non-removable case to federal court. See City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 389 (6th Cir. 2007) (determining "[t]he text of § 1442(a)(1), is best read to mean that the three entities that can remove are (1) the United States; (2) any agency thereof; or (3) any officer of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office"). However, neither section 1441 nor 1442 nullify the strict procedural requirements of 28 U.S.C. § 1446.

Defendant's discussion of § 1442 is inapplicable in the present case because no one is disputing Defendant's entitlement to the authorization for removal provided through that section. Neither the State nor the Citizens Groups assert that Defendant's removal of the present case was improper due to an inappropriate application of § 1442. On the contrary, the State agrees that had Defendant filed its notice of removal within the statutorily allowed time frame provided in § 1446, Defendant's reliance on the federal officer or agency removal statute as grounds for removal would likely be proper. Instead, both the State and Citizens Groups contend this matter must be remanded because Defendant failed to comply with the timing requirement of 28 U.S.C. § 1446, filing its notice of removal more than 2.5 years after the commencement of this action in the Chancery Court for Davidson County, Tennessee.

Defendant's brief appears to incorrectly infer that § 1442 somehow alleviates compliance with the strict timing requirements of § 1446. The majority of cases Defendant cites in support of

2

its argument involve the premise that § 1442 should be broadly construed in determining who may qualify as a federal officer or whether a federal entity may remove without stating a federal defense.[1] These issues are not presented in the removal dispute currently before the Court and therefore these cases are not persuasive.[2]

In its brief, Defendant cites to a case that undercuts its argument that § 1442 trumps the statutory time period for removal.[3] In <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247 (9th Cir. 2006), an electronics technician brought a state court action against a government contractor for

---

[1] Defendant selectively quotes from the cited cases and takes the quotes out of context. Defendant's reliance on these cases is misplaced as they do not stand for the premise Defendant is apparently attempting to assert, that § 1442 overrides the strict timing requirements of § 1446. See <u>Mesa v. California</u>, 489 U.S. 121 (1989) (examining whether a federal defense is necessary for removal under 28 U.S.C. § 1442); <u>Jacks v. Meridian Res. Co.</u>, 701 F.3d 1224 (8th Cir. 2012) (addressing whether a private business qualifies as a federal officer under § 1442); <u>City of Cookeville</u>, 484 F.3d 380 (6th Cir. 2007) (finding under § 1442 a federal agency does not need a federal defense to remove an action assuming all other requirements of removal are satisfied, not establishing that an agency may always remove no matter the circumstances); <u>Willingham v. Morgan</u>, 395 U.S. 402 (1969) (examining whether official immunity is a federal defense that qualifies for removal under § 1442); <u>Watson v. Phillip Morris Co.</u>, 551 U.S. 142 (2007) (committing that although § 1442 is to be construed liberally, "broad language is not limitless," noting that one purpose of the statute is to protect the federal officers "acting within their scope of authority" from "local prejudice against unpopular federal laws," and holding a cigarette manufacturer did not fall within the federal officer removal statute); <u>Arizona v. Manypenny</u>, 451 U.S. 232 (1981) (concluding "the invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied" and holding states may appeal adverse criminal rulings upon removal to the same extent as state law allows); <u>Bennett v. MIS Corp.</u>, 607 F.3d 1076 (6th Cir. 2010) (finding company's removal permissible because company acted under federal officers and therefore qualified for coverage under § 1442); <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247 (9th Cir. 2006) (stating that removal rights under § 1442 are broader than those under § 1441, *but holding a federal officer defendant's 30 days to remove a case commences when the plaintiff discloses sufficient facts for federal officer removal*) (emphasis added); <u>Jacks v. Meridian Res. Co.</u>, 701 F.3d 1224 (8th Cir. 2012) (considering whether a private business qualified as a federal officer).

[2] Defendant's brief asserts "Plaintiffs and Intervenors completely fail to address either the broad presumption favoring removal under Section 1442(a)(1) or the mandate that the statute be liberally construed in favor of a federal forum." (TVA's Consolidated Br. in Opp. to Pls.' and Intervenors' Mot. to Remand, Doc. No. 19 at PageID #: 854.) As discussed, Defendant misunderstands these concepts and therefore no discussion is or was warranted as neither has application to the present motion.

[3] See also <u>May v. City of Flint, Mich</u>, 871 F.3d 437 (6th Cir. 2017). Defendant's citation to <u>City of Cookeville</u>, 484 F.3d 380 (6th Cir. 2007), as support for the proposition that "TVA, as a federal agency, 'can always remove under § 1442(a)(1)'" is misleading. (Doc. No. 19 at PageID #: 853, n.5.) Although the opinion does include this language, Defendant fails to include the entire quote and its presentation in its brief misrepresents the case and the court's holding. See <u>City of Cookeville</u>, 484 F.3d at n.5 ("The removal statute, § 1442(a)(1), is broad and allows for removal when its elements are met 'regardless of whether the suit could originally have been brought in federal court.'") (internal citations omitted). At issue in <u>City of Cookeville</u> was whether a federal agency could remove a matter to federal court without asserting a federal defense. <u>Id.</u> at 389-92. The Sixth Circuit held that under § 1442, simply being a federal agency is enough for removal and there is no requirement that the federal entity also state a colorable federal defense. <u>Id.</u>

3

injuries allegedly incurred from asbestos exposure while serving in the Air Force and Air Force Reserves. Durham, 445 F.3d at 1249. The initial pleading arguably did not disclose enough information to identify the case as removable under the federal officer or agency removal statute, however, the plaintiff's responses to written discovery included sufficient information to establish § 1442 as potentially applicable to the defendant. Id. The defendant then filed its notice of removal, more than 30 days after being served with the initial complaint but less than 30 days after receiving the interrogatory responses. Id. The plaintiff moved for remand, claiming the removal was untimely under § 1446, and the district court granted the motion. Id. at 1249-50. On appeal, the Ninth Circuit could not reverse the remand decision, but did review the lower court's reasoning. The appellate court recognized that "[b]ecause it's so important to the federal government to protect federal officers, removal rights under section 1442 are much broader than those under section 1441," giving examples such as "[f]ederal officers can remove both civil and criminal cases, whiles section 1441 provides for only civil removal" and "removals under section 1441 are subject to the well-pleaded complaint rule, while those under section 1442 are not." Durham, 445 F.3d at 1253. The court "[m]indful of these differences, and the justifications for removal they reflect, [then returned to the issue of] the timeliness of [the defendant's] removal under section 1446." Id. The court noted that "where the timeliness of a federal officer's removal is at issue, [the court would] extend section 1442's liberal interpretation to section 1446" and determined "[a]s far as the federal officer is concerned, the case isn't 'removable' until the federal officer ground for removal is disclosed." Id. The court then held "*that a federal officer defendant's thirty days to remove commence[s] when plaintiff discloses sufficient facts for federal officer removal.*" Id. (emphasis added). Durham confirms that federal officer removal under § 1442 is subject to the same strict timing requirements of § 1446 as removal under § 1441 and Defendant's current

4

position is in direct conflict with this holding. All parties agree that this matter was removable upon Defendant's receipt of the State's original complaint and therefore the Defendant's clock started on that date. (See Notice of Removal, Doc. No. 1 at PageID#: 2-3; Pls.' Mot. to Remand, Doc. No. 12 at PageID #: 622; Mem. in Supp. of Conservation Groups' Mot. to Remand, Doc. No. 17 at PageID #: 655.)

Defendant failed to comply with the strict timing requirements for removal as outlined in the plain language of § 1446. (See generally Mem. of Law in Supp. of Pls.' Mot. to Remand, Doc. No. 18 at PageID #: 707-12.) It is well established that untimeliness is an appropriate ground for remand, regardless of the jurisdictional basis for removal. Adams v. Western Steel Buildings, Inc. 296 F. Supp. 759, 761 (D. Col. 1969) (finding "the procedural requirements of section 1446, specifically the thirty day time limitation of subsection (b), are applicable to actions removed under section 1442(a)(2) on federal officers as well as to those removed under the general statute."); see also J.L. McGuire & Assocs. v. Innovative Ceramics, Inc., 63 F. Supp. 2d 841, 843 (N.D. Ohio 1999) ("It has long been held that the right of removal 'is given only to a defendant who promptly avails himself of the right at the time of appearance. . . .'" (quoting West v. Aurora City, 73 U.S. 139, 142 (1867)); Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co., 753 F. Supp. 660, 664 (N.D. Ohio 1990) (recognizing that the right to remove "only exists for thirty days as stipulated in 28 U.S.C. § 1446(b)" and holding that "failure to comply with the thirty day limitation to file a petition for removal is an absolute bar regardless of whether the removal would have been proper if timely filed"). As a result, Defendant's removal is improper and the Court should grant the State's motion and remand this matter back to the Chancery Court for Davidson County, Tennessee.

5

### B. Defendant's Assertion that the Revival Exception is "Well-Established" is Incorrect.

Defendant next argues that the revival exception is well accepted and effective at overcoming remand of untimely removed cases. A review of the case law does not support Defendant's position. As set out in the State's Memorandum of Law in Support of Plaintiffs' Motion to Remand, what is well-established is that courts strictly construe and enforce Congress' statutory requirements for the timing of removal. (See Doc. No. 18 at PageID #: 707-13.) Defendant's support for its assertion that the revival exception is a "longstanding principle of removal law" cites a number of cases discussed and distinguished in the State's previously filed memorandum of law, including Cliett v. Scott, 233 F.2d 269 (5th Cir. 1956) and Johnson v. Heublein, Inc., 227 F.3d 236 (5th Cir. 2000). (See TVA's Consolidated Br. in Opp. to Pls.' and Intervenors' Mot. to Remand, Doc. No. 19 at PageID #: 854-57; Doc. No. 18 at PageID #: 712-20.) Defendant first agrees with the State that the Sixth Circuit has not adopted the revival exception, however, then appears to assert the existence of the exception and its potential application within the Circuit. As previously outlined in the State's memorandum, the revival exception is neither well accepted nor often successfully asserted as Defendant claims, but instead is "an inconsistently recognized and rarely successful judicially-created equitable exception." (Doc. No. 18 at PageID #: 713.) The majority of appellate and district courts presented with the issue question the existence of the revival exception, its appropriateness, and predominately deny revival of an expired removal period. (Doc. No. 18 at PageID #: 713-18; Doc. 19 at PageID #: 854-57.) Defendant cites to no Sixth Circuit opinion supporting its position because, as discussed in the State's memorandum of law, the appellate court has not considered the issue. However

6

district courts within the Circuit routinely reject claims of the exception[4] and have expressed significant doubt as to whether the Sixth Circuit would ever endorse the revival exception. (Doc. No 18 at PageID #: 715-16.)

Defendant also attempts to make a legislative intent argument regarding, in its opinion, Congress' failure to amend § 1446. Defendant claims that "Congress has amended the statute ten times since 1948, but has not modified Section 1446(b)(1) to address the effect of amended pleadings" and then cites to Astoria Fed. Savs. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) as support for its claim that revival is a well-established common law principle and therefore courts may rule against the plain language of the statute. (Doc. No. 19 at PageID #: 857.) There are several problems with Defendant's position. First, contrary to Defendant's assertions, the plain language of § 1446(b) does address amendments, stating:

> if the case stated by the initial pleading is not removable, notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3) (2107). Additionally, Congress amended § 1446 most recently in 2011, well after the claimed existence of the judicially-created revival exception and the dispute among courts regarding both its correctness and application. If Congress intended § 1446 to include a revival exception beyond what it has already provided in (b)(3), it has had ample opportunity to do so. Congress' inaction is not a failure to legislate as Defendant claims, but instead evidences its clear intent to not provide a revival exception. Finally, the court in Solimino was considering the well-established common law principles of collateral estoppel and res judicata. Defendant's attempt to equate the revival exception to these two legal principles that date back before the

---

[4] In the most recent case within the Sixth Circuit to address the issue, the District Court for the Western District of Kentucky declined to recognize revival exception. ACR Dealer Funding, L.L.C. v. Auto Brokers USA Corp., No. 3:17-cv-00083-CRS, 2017 WL 1416823 at *1-2 (W.D. Ky. Apr. 18, 2017).

7

existence of English common law is weak. See Jack A. Friedenthal, Mary Kay Kane & Arthur R. Miller, Civil Procedure § 14.2 (3rd ed. 1999).

### C. Even if the Revival Exception is Available, Defendant is not Entitled to Its Application.

Although the revival exception is far from an accepted premise in the Sixth Circuit, Defendant correctly recognizes that if the revival exception were available, it may only be considered in a very limited and narrow circumstance: "where the plaintiff files an amended complaint that so changes the nature of [the] action as to constitute substantially a new suit begun that day." Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n, 668 F.2d 962, 965 (7th Cir. 1982) (discussing revival but declining to extend the exception). As thoroughly discussed in the State's previously filed memorandum of law, the amendments to the State's complaint do not rise to the level necessary to trigger consideration of the revival exception. (See Doc. No. 18 at PageID #: 718-20.) The State's action involves the same parties, the same issues, primarily the same facts, and again seeks injunctive relief and the potential assessment of civil penalties under the TWQCA.[5] The case was initially removable in January of 2015 and nothing in the State's

---

[5] Defendant cites to Johnson v. Heublein in support of its argument that the State's amendments rise to the level necessary to trigger the revival exception, if it exists. However, Johnson is distinguishable from the present case. In Johnson, the plaintiffs sued one group of defendants for defaulting on promissory notes secured by financing on a piece of equipment, which formed the basis of a contract dispute due to its late delivery, and another group of defendants for wrongfully converting the piece of equipment. Johnson, 227 F.3d at 239. Complete diversity existed at the outset, however, defendants did not remove. Id. at 239. The plaintiffs settled with the promissory note defendants, who assigned their claims against the remaining defendants to the original plaintiffs and became co-plaintiffs. Id. The co-plaintiffs then filed an amended complaint and defendants removed. The Fifth Circuit affirmed the district court's finding that removal was timely under the revival exception, noting the amended complaint contained allegations that "bear no resemblance to the allegations of the [original complaint]," including realigning the parties and adding claims of breach of contract, bad faith breach of contract, unjust enrichment, and fraud "upon which no significant proceedings have been held." Id. at 239, 242 (citing Johnson v. Heublein, Inc., 982 F. Supp. 438 (S.D. Miss. 1997)). In the present case, there has been no rearrangement of the parties and the case has not increased in complexity as both the original and amended complaints properly name Defendant as a responsible party, allege violations of the SWDA, the TWQCA, and Defendant's NPDES permit, and seek injunctive relief and assessment of civil penalties under the TWQCA. The minor amendments to the State's complaint do not rise to level the substantial alternations and additions present in Johnson.

Amended Verified Complaint changes the basis of Defendant's original right to remove or provides a new removal period. Defendant failed to timely remove within the window provided by the plain language of § 1446 and the State's amendments are not of the substantial and significant nature required to "affect the nature of the action such that a substantially new suit began." ACR Dealer Funding, L.L.C. v. Auto Brokers USA Corp., No. 3:17-cv-00083-CRS, 2017 WL 1416823 at *2 (W.D. Ky. Apr. 18, 2017).

Defendant claims in its brief that it is entitled to revival, if it exists, because the State's amendments "potentially exposes TVA to millions of dollars in additional liability," from penalties under what it calls "the new SWDA cause of action." (Doc. No. 19 at PageID #: 860.) However, this claim is demonstrably incorrect as the State's Amended Verified Complaint alleges no violations of the SWDA beyond those associated with the NRS, which were part of the original complaint. The "new SWDA cause of action," involves the closure of the ponds, not violations for which the State is seeking civil penalties. Defendant's potential exposure to civil penalties under the amended complaint is no more than under the original complaint. Additionally, the injunctive relief under "the new SWDA cause of action" is in actuality also nothing new to Defendant. The amendments to the State's complaint related to the application of the SWDA to Ponds A and E merely reflect the same regulatory process as employed at the NRS, a process Defendant has participated in for decades.

Defendant spends significant time discussing what it claims as "TDEC's changed position," regarding its NPDES permit as somehow providing a basis for removal. However, as discussed infra, these claims have no bearing on the issue before the Court. Defendant also continuously claims the State acted "voluntarily" and "unilaterally" in its decision to amend when, in reality, Defendant is the party that acted unilaterally in its decisions to change its operations at

9

the GAF. The State merely acted in response as required by Tennessee law. As discussed in the State's filing related to the amendment of its complaint and it memorandum of law filed in support of its motion to remand, the amendments to the State's complaint were a direct result of information received from Defendant. See Exhibits 1-2; Not. of Removal, Attch. 1, Doc. No. 1-1 at PageID #: 288. At the time of the State's filing of the original complaint, Defendant's operation at the GAF included use of the entire Ash Pond Complex, made up of Bottom Ash Pond A, Fly Ash Pond E, and Stilling Ponds B, C, and D, in its treatment of CCR process wastewater. This is the activity specifically authorized in Defendant's NPDES permit. Subsequent to the original filing, Defendant announced its decision to cease operation and close Ponds A and E[6] and, as a result, the State's amendments were required under state law. As explained in the Amended Verified Complaint, the disposal of CCR material into these ponds falls under the regulation of the SWDA. (Doc. No. 1-1 at PageID #: 297.) However, while the ponds were serving a CCR process wastewater treatment function, they were exempted from regulation under the SWDA and instead regulated under the provisions of the TWQCA. (Id.) Once Defendant made the decision to remove Ponds A and E from the wastewater treatment process at the GAF, the ponds no longer met the statutory requirements for the exception and therefore, through operation of Tennessee law, were once again subject to regulation under the SWDA. (Doc. No. 1-1 at PageID #: 299.) This same reasoning will apply to Stilling Ponds B, C, and D if and when Defendant decides to cease using these impoundments to treat CCR process wastewater, which, as Defendant has announced its intent to convert entirely to dry ash storage, is a potential outcome. Defendant is correct that the

---

[6] Defendant's brief claims that it is "TDEC's stated intent that the ponds would not be covered under any future NPDES permit and therefore must be closed." (Doc. No. 19 at PageID #: 859.) The closure of Ponds A and E was Defendant's decision, not TDEC's. Defendant announced its intention to cease operation and close Ponds A and E. After receiving this information, TDEC notified Defendant that the ponds would no longer be serving a wastewater treatment function according to Defendant's notification of its operational changes at the GAF. Because the ponds would no longer be serving a wastewater treatment function subject to an NPDES permit, TDEC also advised that Defendant's notified closure of the ponds would be regulated under the provisions of the SWDA.

10

State noted that Pond A, Pond E, and Stilling Ponds B, C, and D were all covered under the NPDES permit and did not include SWDA claims related to these impoundments in the original complaint, but that is because the State had no statutory authority to do so at the time. Defendant's arguments related to the State's Amended Verified Complaint providing a new right to removal fail and the Court should grant the State's motion and remand this matter back to the Chancery Court for Davidson County, Tennessee.[7]

### D. Defendant's Claims related to its NPDES Permit Have no Bearing on the Issue of Remand.

Defendant spends significant time on arguments related to its NPDES permit. These assertions are unrelated to the issue of remand and therefore are inappropriate. Defendant also

---

[7] Defendant also makes an argument related to the amending of complaints in Tennessee. Defendant appears to argue that an amendment commences a new lawsuit, nulling in its entirety the previous action and creating an "initial pleading" under 28 U.S.C. § 1446(b)(1). Under Defendant's argument, merely correcting a typographical error would appear to constitute an amendment sufficient to void an original pleading and its filing date, thus "reviving" a defendant's right to removal under § 1446(b)(1) because the amendment creates a new "initial pleading." First, Defendant appears to misunderstand amendments and what it means when an "original pleading no longer performs any function." 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer & Adam N. Steinman, Fed. Prac. & Pro. § 1476 (3rd ed. 2017 update) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading."); see also § 1496. Additionally, neither Tennessee nor federal case law support Defendant's attempt to vastly expand the already questionable revival doctrine. The case law discussing the revival exception does not support Defendant position, which is why Defendant includes no citations in support of its claim. Additionally, Defendant's argument fails under state law. Tenn. R. Civ. P. 15 provides "whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Tenn. R. Civ. P. 15.03 (2016). Additionally, Defendant neglects to include the complete language from Christian v. Lapidus, in which the court recognized that "under the Federal Rules of Civil Procedure, an amended complaint supersedes the original complaint, rendering the original of no legal effect, *unless the amended complaint specifically refers to or adopts the original*." Lapidus, 833 S.W.2d 71, 73 (Tenn. 1992) (emphasis added). The State's motion to amend (attached hereto and incorporated by reference herein as Exhibit 1), memorandum of law in support of its motion to amend (attached hereto and incorporated by reference herein as Exhibit 2), and the Amended Verified Complaint itself (Not. of Removal, Attch. 1 Doc. No. 1-1 PageID #: 288) reference the original complaint and relate back to the filing of the original complaint. When considering the expiration of a statute of limitations period in Doyle v. Frost, the Tennessee Supreme Court recognized the effect of the relation back doctrine, noting '[i]n the most basic terms, an amendment under Rule 15.03 made pursuant to the relation back doctrine is not considered excepted from the applicable statute of limitations period, it is considered made before the limitations period expired." Doyle v. Frost, 49 S.W.3d 853, 858 (Tenn. 2001) (citing Black's Law Dictionary (6th ed 1990) (defining "relation back" as "[a]principle that an act done today is consider to have been done at an earlier time"). Under both federal and state law, Defendant's window for removal closed on February 9, 2015.

11

makes several claims that through this litigation the State is somehow attempting to circumvent the permit appeal process. This claim is both irrelevant to the issue before the Court and one Defendant well knows is incorrect. Despite the fact that Defendant's allegations are irrelevant for the purposes of the present motion, the State will very briefly respond to Defendant's claims.

Defendant's NPDES claims fail to recognize the purpose of NPDES permits and misrepresent NPDES permitting in Tennessee. NPDES permits are wastewater discharge permits and Defendant's NPDES permit authorizes it to discharge CCR process wastewater effluent from the Ash Pond Complex into the Cumberland River at a specified location. (Doc. No. 1-1 at PageID # ¶ 297-298.) However, Defendant has now advised of its intent to cease using Ponds A and E as part of its wastewater treatment process and therefore these ponds no longer require a discharge permit. (Doc. No. 1-1 at PageID #: 299-300.) Defendant's claims that TDEC's notification that these impoundments will not be part of Defendant's reissued discharge permit will have disastrous effects on both Defendant and Middle Tennessee,[8] and somehow shows dishonesty on the part of TDEC are disingenuous and unsupported. Defendant advised TDEC that it would no longer be using Ponds A and E as part of its CCR wastewater treatment process at the GAF and TDEC simply responded as required under the state environmental laws and their implementing rules and regulations.

The most egregious of Defendant's accusations is that TDEC is attempting to circumvent the permit appeal process. Defendant holds a variety of NPDES permits at multiple facilities

---

[8] In several locations throughout it brief, Defendant alleges that TDEC notification that Ponds A and E would no longer require a NPDES permit as a result of Defendant's decisions to cease their operation "would have the direct and dire effect of TVA having to cease operations at GAF [Gallatin] with significant adverse impact to the regional economy and people of Middle Tennessee" appears to be an attempt to distract the Court. (Doc. No. 19 at PageID #: 849.) Defendant chose to cease sending CCR process wastewater to Pond E, i.e. Pond E no longer accepted wastewater and ceased serving a wastewater treatment function, in late 2015/early 2016. This decision was solely Defendant's and was not done at the direction of TDEC. To the State's knowledge, the GAF has continued uninterrupted operation to date and there has been no impact to either the economy or citizens of Middle Tennessee.

12

throughout Tennessee. It is not a novice when it comes to either the permitting process or permit appeals, both appeals from the permittee itself and third parties. Defendant is well aware of how the appeals process works, but its argument evidences an apparent willful misrepresentation as it neglects to include the fact that following TDEC's reissuance of Defendant's NPDES permit for the GAF, Defendant has the right to appeal particular permit conditions or the permit in its entirety. This litigation has no bearing on that right. During the pendency of a permit appeal, the appealed permit or specific appealed conditions do not go into effect until a final resolution of the appeal. In the present case, this would mean that Defendant would continue to operate the GAF pursuant to the terms and conditions of its current NPDES permit, not pursuant to an appealed reissued permit. This procedure is not new and is a process Defendant is very familiar with given its decades-long history with NPDES permitting in Tennessee. However, even without Defendant's sophistication, TDEC includes this very information in its correspondence to permittees when the Department receives a complete permit application. TDEC sent Defendant its most recent notification on November 23, 2016, after receiving Defendant's application for renewal of its current NPDES permit. See Correspondence from Vojin Janjić to Terence Edward Cheek, Nov. 23, 2016, attached hereto and incorporated herein as Exhibit 3. As Defendant's claims have no relevance on the issue of Defendant's removal of this matter and are factually incorrect, the Court should not consider Defendant's arguments related to its NPDES permit.

### E. The Principles of Fundamental Fairness and Judicial Economy Weigh in Favor of Remand.

Finally, Defendant attempts to make "fundamental fairness" and judicial economy arguments in favor of its position regarding the revival exception. Unfortunately, the principles of fairness and economy weigh significantly against Defendant and in favor of remand. As discussed in the State's memorandum of law in support of its remand motion, even if the Court were to accept

13

Defendant's arguments regarding the existence and availability of the revival exception, it should still remand this matter back to the state court.

Defendant claims it "received no undeserved tactical advantage" through removal, however, the facts reveal the opposite to be true. (Doc. No. 19 at PageID #: 862.) The parties had completed significant written discovery, were days away from depositions, and mere months away from trial in a matter that had already been pending for nearly 950 days when Defendant effectively granted itself a stay of the proceedings through its improper removal. Additionally, Defendant previously attempted to use the state case to gain a tactical advantage in the related federal matter and now is attempting through removal to take a similar action, but in reverse. Defendant was repeatedly unsuccessful in delaying this matter in the Chancery Court and is now attempting to use this forum as protection from the state court. It would be neither convenient nor fair to the State and Citizens Groups to begin this case again in a new forum after progressing through the state court process to near completion prior to Defendant's removal.

Defendant also claims its removal promotes judicial efficiency because this Court "is more familiar with the facts of the case than the State Court," however this is also an incorrect assertion (See Doc. No. 19 at PageID #: 862.) As previously discussed, the Chancery Court presided over this matter for over 2.5 years during which the case was actively litigated and involved significant motion practice requiring a substantial effort on the part of the Chancery Court to understand the facts and law associated with the case and issues raised. Additionally, this Court specifically excluded all matters included in the state action from the related federal litigation and therefore Defendant's claims concerning the Court's adjudication of that matter are not persuasive. Finally, as detailed in the State's memorandum of law, it would be extremely inefficient for this Court to hear the state case as it is based entirely in complex state law, requiring this Court to stand in the

14

shoes of the Chancery Court and interpret Tennessee state law.  Even if the Court determines the revival exception could operate in this matter, the Court should, after balancing the equities, grant the State's motion and remand this matter back to the Chancery Court for Davidson County, Tennessee.

## CONCLUSION

Based on the foregoing, the Court should grant the State's Motion to Remand.  Defendant has failed to carry its burden and demonstrate compliance with the statutory requirements for removal.  Defendant has also failed to establish the existence of the revival exception in this jurisdiction or its entitlement to revival if such an exception were permissible.  Finally, Defendant has failed to establish that the principles of fundamental fairness or judicial economy support removal given the extensive litigation history of this matter and that the State's claims are based solely in state law.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter
State of Tennessee

_s/ Emily B. Vann_____
EMILY B. VANN, BPR No. 026642
Assistant Attorney General
SOHNIA W. HONG, BPR No. 017415
Senior Counsel
J. PETER. MURREY, BPR No. 033455
Assistant Attorney General
Environmental Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 532-2583
emily.vann@ag.tn.gov

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2017, a copy of Plaintiffs' Reply to Defendant's Consolidated Brief in Opposition to Plaintiffs' and Intervenors' Motions to Remand was filed electronically through the Court's ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

Elizabeth A. Alexander
Anne E. Passino
Southern Environmental Law Center
2 Victory Avenue South, Suite 500
Nashville, Tennessee 37213
(615) 921-9470

Frank S. Holleman III
Southern Environmental Law Center
601 West Rosemary Street, Suite 220
Chapel Hill, North Carolina 27516
(919) 967-1450

*Attorneys for Plaintiff- Intervenors Tennessee Scenic Rivers Association and Tennessee Clean Water Network*

David D. Ayliffe
James S. Chase
Frances Regina Koho
Lane E. McCarty
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902

*Attorneys for Defendant Tennessee Valley Authority*

Parties may access this filing through the Court's ECF system.

_s/ Emily B. Vann_____
EMILY B. VANN
Assistant Attorney General

16