# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **STATE OF TENNESSEE ex rel. HERBERT H. SLATERY III, in his official capacity as the Attorney General and Reporter of Tennessee and ROBERT J. MARTINEAU, JR., Commissioner of the Tennessee Department of Environment and Conservation,** ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** ) | |
| ) **and** ) | **NO. 3:17-cv-01139** <br> **CHIEF JUDGE CRENSHAW** |
| ) **TENNESSEE CLEAN WATER NETWORK and TENNESSEE SCENIC RIVERS ASSOCIATION,** ) ) ) ) | |
| **Plaintiff-Intervenors,** ) ) | |
| **v.** ) ) | |
| **TENNESSEE VALLEY AUTHORITY,** ) ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter is before the Court on the motions of Plaintiffs (the "State") and Plaintiff-Intervenors ("Citizens Groups") to remand the case to the Chancery Court for Davidson County, Tennessee. (Doc. Nos. 12, 14.) Defendant Tennessee Valley Authority ("TVA") has responded in opposition (Doc. No. 19), and the State and the Citizens Groups have replied (Doc. Nos. 21, 22). For the following reasons, the Court will grant the motions.

I.      Background[1]

TVA owns and operates an active coal-fired power plant (the "Gallatin Plant") located on the north bank of the Cumberland River, within approximately five miles of Gallatin, Tennessee. Until 1970, coal combustion residual material ("CCR") generated through the operation of the Gallatin Plant was treated in a series of unlined ash ponds located on the western edge of the site. In 1970, these ponds were closed after reaching capacity; that area is typically referred to as the "Non-Registered Site." Under Tennessee law, the Non-Registered Site is considered a solid waste disposal site, and it is managed by the Tennessee Department of Environment and Conservation's ("TDEC") Division of Solid Waste Management under the Tennessee Solid Waste Disposal Act ("SWDA"). See Tenn. Code Ann. §§ 68-211-101 to 68-211-124.

After 1970, TVA began treating its CCR using a series of unlined ponds located north-northeast of the Non-Registered Site. This area includes Bottom Ash Pond A ("Pond A"), Fly Ash Pond E ("Pond E"), and Stilling Ponds B, C, and D (together, the "Ash Pond Complex"). The Ash Pond Complex covers several hundred acres, and it ultimately discharges to the Cumberland River under a TDEC-issued National Pollutant Discharge Elimination System ("NPDES") permit.

On June 26, 2012, TDEC's Division of Water Resources issued the most recent version of TVA's individual NPDES permit (the "NPDES Permit"). The NPDES Permit authorizes TVA to discharge treated effluent from the Ash Pond Complex in a certain manner and imposes certain daily maximum and monthly average limits on effluent characteristics. The NPDES Permit requires TVA to conduct inspections of the Ash Pond Complex for structural defects and to identify certain conditions that may be indicative of structural instability.

---

[1] The following background facts are greatly simplified and included only to the extent necessary to resolve the pending motions.

On November 10, 2014, the Citizens Groups issued a 60–day Notice of Violation Letter to TVA, TDEC, and the Environmental Protection Agency under the citizen suit provision of the Clean Water Act, 33 U.S.C § 1365, alleging multiple violations at the Gallatin Plant. See 33 U.S.C §§ 1251–1387. In response, on January 7, 2015, the State filed a complaint against TVA in the Chancery Court for Davidson County, Tennessee ("Chancery Court"), alleging violations of the SWDA, the Tennessee Water Quality Control Act of 1977, as amended, Tenn. Code Ann. §§ 69-3-101 to 69-3-137 ("TWQCA"), and the NPDES Permit. With TVA's agreement, the Citizens Groups intervened pursuant to Tenn. R. Civ. P. 24.01(3). On February 27, 2015, the Citizens Groups filed their complaint in intervention, also alleging violations of the SWDA, TWQCA, and the NPDES Permit at the Gallatin Plant. TVA answered the State's and Citizens Group's complaints on March 3, 2015, and April 1, 2015, respectively.[2] TVA did not seek to remove the state court case.

The parties engaged in discovery and motion practice for over two years pursuant to multiple scheduling orders.[3] In April 2017, the Chancery Court set trial for December 2017 and extended certain discovery deadlines. In May 2017, the Chancery Court denied TVA's motions to (1) bifurcate the liability and remedy portions of trial and (2) condition the Citizen Groups' participation in depositions and at trial. In June 2017, the Chancery Court denied TVA's motions for (1) summary judgment on the State's complaint and (2) judgment on the pleadings on the

---

[2] On April 14, 2015, the Citizens Groups filed in this Court a federal lawsuit against TVA for alleged violations at the Gallatin Plant pursuant to the citizen suit provision of the Clean Water Act. (See Case No. 3:15-cv-00424.) Among other things, TVA sought to have the federal action dismissed on the ground of diligent prosecution by the State in the state action. The federal action was eventually tried to a judgment against TVA and is now on appeal.

[3] By October of 2017, TVA had made twenty-two document productions and produced over 43,000 pages in discovery.

Citizens Groups' complaint in intervention.[4] On June 30, 2017, TVA filed a motion for leave to file amended answers.

On July 6, 2017, the State forwarded a proposed amended complaint to the parties.[5] (Doc. No. 17-1.) TVA did not consent to the proposed amended complaint and thus, on July 13, 2017, the State filed a motion to amend. On July 17, 2017, TVA filed a motion seeking interlocutory appeal of the Chancery Court's order denying summary judgment. The Chancery Court held TVA's motion to amend its answers in abeyance until after disposition of the State's motion to amend. But then TVA did not oppose the State's amendments, and on August 2, 2017, the Chancery Court entered an order granting the State's motion, entering the amended complaint, and ordering TVA to serve its answer within 30 days.

The amended complaint provides more information on a variety of subjects, including management of the Non-Registered Site, handling of CCR, and NPDES permit authorization. (Doc. No. 18-1 at Ex. 5, ¶¶ 22-48.) It also adds additional information concerning the ongoing investigation at the Gallatin Plant, including alleged TVA violations. (Id. at ¶¶ 45, 50-52.) Perhaps most notably, the amended complaint subjects Pond A and Pond E to treatment as solid waste disposal sites under the SWDA (in the same manner as the Non-Registered Site), as opposed to

---

[4] The parties began scheduling many depositions ahead of the discovery deadline of at the end of September 2017. By July 2017, the depositions for numerous TVA witnesses had been requested and scheduling was being negotiated.

[5] In October 2016, TVA submitted an application to TDEC for renewal of the NPDES Permit. Subsequently, TVA notified the State that Pond A and Pond E were no longer being utilized for treatment of CCR process wastewater as part of the Ash Pond Complex. According to the State, this brought Pond A and Pond E under the regulatory rubric of the SWDA and excluded them from being included in the renewed NPDES Permit. The State concluded that its preferred remedy was a closure-on-site option, which involves removal of impoundments into an expansion of the existing on-site permitted landfill. This had led, in significant part, to the amended complaint.

wastewater treatment sites.[6] Finally, the amended complaint seeks the same types of relief originally pled in the complaint, including injunctive relief and the potential assessment of civil penalties under the TWQCA; however the request for injunctive relief has been broadened to incorporate Pond A and Pond E under the SWDA on an accelerated basis, a result that TVA claims would have "dire consequences." (Doc. No. 19 at 9.) While TVA argues that "the new SWDA cause of action potentially exposes TVA to millions of dollars in additional liability," (id.), the State has affirmatively represented to the Court that TVA's "potential exposure to civil penalties under the amended complaint is no more than under the original complaint." (Doc. No. 22 at 9.)

On August 4, 2017, the Chancery Court denied TVA's motion for permission to appeal the denial of summary judgment. On August 9, 2017, TVA filed a motion to exclude three of the State's disclosed experts. On August 10, 2017, the State moved to compel TVA to comply with discovery obligations ahead of the trial. That same day, one week before the parties were set to begin deposing dozens of fact and expert witnesses, TVA filed a Notice of Removal, removing the action to this Court over two and one-half years after it was initially filed in the Chancery Court.

---

[6] TVA contends that the amended complaint is "substantially different from the allegations and causes of action in the [original complaint], in which [the State] alleged that Ponds A and E were part of [the Gallatin Plant's] single wastewater treatment unit and permitted as such under the [NPDES Permit.] (Doc. No. 19 at 7.) However, the State represents that what TVA calls a "new SWDA cause of action" in the amended complaint actually only takes into account regulatory changes necessitated by the "the closure of the ponds, not violations for which the State is seeking civil penalties." (Doc. No. 22 at 8-9.) The amended complaint indeed contains a cause of action entitled "Closure of Bottom Ash Pond A and Fly Ash Pond E" that is premised on the SWDA, whereas the original complaint asserted only a TWQCA claim as to the entire Ash Pond Complex.

II.     <u>Discussion</u>

A.     <u>Background Law</u>

The United States or any agency thereof may remove any civil action or criminal prosecution relating to official acts that is commenced against it in a state court "to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1). The notice of removal of a civil action or proceeding must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Stated differently, "the 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains "solid and unambiguous information that the case is removable." <u>Holston v. Carolina Freight Carriers Corp.</u>, No. 90-1358, 1991 WL 112809, at *3 (6th Cir. June 26, 1991) (per curiam). If the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper" that contains solid and unambiguous information that the case is removable. <u>See</u> 28 U.S.C. § 1446(b)(3); <u>Berera v. Mesa Med. Grp., PLLC</u>, 779 F.3d 352, 364 (6th Cir. 2015); Charles Alan Wright, Arthur R. Miller, et al., 14B Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2018) ("[Section 1446(b)(3)] requires . . . that a previously unremovable case has become removable.").[7] A party may seek remand of a removed action

---

[7] Examples given by Wright & Miller of the circumstances in which late removal may be effective under 1446(b)(3) include: "plaintiff amends to include a claim for relief that falls within the subject matter jurisdiction of the federal courts, such as a federal question claim or a separate and independent claim that is removable," where the amount in controversy is increased to satisfy the jurisdictional requirement, or where a change in parties causes the parties to be completely diverse. 14B Fed. Prac. & Proc. Juris. § 3731.

"within 30 days after the filing of the notice of removal." 28 U.S.C. 1447(c); Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 392 (1998).

"The right of removal of a suit from state court to federal court is a statutory right." Regis Assocs. v. Rank Hotel (Mgmt.), Ltd., 894 F.2d 193, 195 (6th Cir. 1990) (citing 28 U.S.C. § 1441). The party seeking removal bears the burden of establishing its right to removal. Byrd v. Tenn. Wine & Spirits Retailers, Ass'n, No. 3:16-cv-02738, 2017 WL 67993, at * 3 (M.D. Tenn. Jan. 6, 2017). The removal statute is to be strictly construed, with any ambiguity resolved against removal. Id; see also Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32 (2002); Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 405 (6th Cir. 2007); Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 704 (6th Cir. 2005); Brown v. New Jersey Mfrs. Ins. Grp., 322 F. Supp. 2d 947, 950 (M.D. Tenn. 2004). On a motion to remand, the defendants bears the burden of establishing that removal was proper. Her Majesty the Queen v. Detroit, 874 F.2d 332, 339 (6th Cir. 1989); Atkinson v. Morgan Asset Mgmt., Inc., 664 F. Supp. 2d 898, 902 (W.D. Tenn. 2009). Upon such a motion, "all doubts" about whether removal is proper must be resolved in favor of remand. Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999).

B.    TVA's Notice of Removal Was Untimely Under the Removal Statutes

The statutory 30-day removal deadline in § 1446(b)(1) is "phrased in mandatory terms." May v. Johnson Controls, Inc., 440 F. Supp. 2d 879, 882 (W.D. Tenn. 2006). "[F]ailure to comply with the . . . limitation . . . is an absolute bar regardless of whether the removal would have been proper if timely filed." Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co., 753 F. Supp. 660, 664 (N.D. Ohio 1990); accord Finley v. The Higbee Co., 1 F. Supp. 2d 701, 702 (N.D. Ohio 1997); Green v. Clark Ref. & Mktg., Inc., 972 F. Supp. 423, 424 (E.D. Mich.1997); McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994). Here, the State served its original complaint on

TVA on January 8, 2015. TVA is an agency and instrumentality of the United States created by and existing pursuant to the Tennessee Valley Authority Act of 1933, as amended, 16 U.S.C. §§ 831-831ee (2012). Because an agency of the United States was a defendant, the state court action was therefore initially removable. 28 U.S.C. § 1442(a)(1). TVA admits this in its Notice of Removal. (Doc. No. 1 at ¶¶ 5-7.) TVA therefore had to remove the case within 30 days of January 8, 2015. 28 U.S.C. § 1446(b). Instead, however, TVA made a deliberate decision to not remove the state court action within the 30-day period. TVA eventually filed a Notice of Removal on August 10, 2017 – over two and one-half years later. TVA therefore failed to comply with the statutory requirements for removal in § 1446(b)(1). Moreover, because this matter was initially removable, TVA is not entitled to late removal under § 1446(b)(3).

TVA makes a curious argument that it is "always" – meaning "at any time" – entitled to remove under § 1442(a)(1) because it is a federal government entity. (Doc. No. 19 at 10-11.) In support of this contention, TVA relies upon City of Cookeville, Tenn. v. Upper Cumberland Membership Corp., 484 F.3d 380, 389 & n.5 (6th Cir. 2007). TVA quotes the court in City of Cookeville as saying that "the text and legislative history of § 1442(a)(1) demonstrate that any federal agency sued can *always* remove under §1442(a)(1)[.]" (Doc. No. 19 at 10 (emphasis added by TVA).) TVA's clear implication is that the Sixth Circuit was referring to the *timing* of removal. (Doc. No. 19 at 10-11.) However, this is plainly wrong. Even a cursory reading of City of Cookeville reveals that the court's holding concerned *not* timing but the *identity of the government defendant and the reason* for removal. City of Cookeville, 484 F.3d at 388-392. The court did not discuss or broaden the procedural requirements of § 1446. Id. In short, City of Cookeville stands

for nothing more than the proposition that government entities, such as the Rural Utilities Service or TVA, may "always" remove, but within the guidelines of the removal statutes.[8]

This more accurate reading of <u>City of Cookeville</u> (and several other cases about the scope of § 1442 cited by TVA) is reflected in clear authority holding that, while the United States or an agency/officer thereof may remove an action to federal court, it *must* comply with the removal procedures in § 1446. <u>See, e.g.</u>, 14B Fed. Prac. & Proc. Juris. § 3726 ("The procedure for removal by a federal [agency or] officer under Section[ ] 1442 generally is governed by Section 1446."); <u>Lang v. Social Sec. Admin.</u>, 612 F.3d 960, 964 (8th Cir. 2010) (noting that the Social Security Administration was subject to § 1446's 30-day deadline); <u>New York v. DeVecchio</u>, 468 F. Supp. 2d 448, 450 (E.D.N.Y. 2007) (removal under § 1442 by F.B.I. agent accused of complicity in four murders was subject to requirements of § 1446); <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247, 1253 (9th Cir. 2006) (holding that even though removal rights are broader for federal defendants under § 1442, a federal defendant still has "thirty days to remove" under § 1446 once given sufficient notice); <u>Zeigler v. Beers</u>, 412 F. Supp. 2d 746, 749-50 (N.D. Ohio 2005) (finding the United States was subject to § 1446 in lien dispute); <u>Mortg. Elec. Registration Sys. v. Rothman</u>, No. 04 C 5340, 2005 WL 497794, at *4-5 (N.D. Ill. Feb. 28, 2005) (holding same as to Internal Revenue Service); <u>Accurate Transmission Serv., Inc. v. United States</u>, 225 F.R.D. 587 (E.D. Wis. 2004) (noting that "Section 1446 provides the procedure for removal" and remanding as untimely a case removed by the United States); <u>Groesbeck Invs., Inc. v. Smith</u>, 224 F. Supp. 2d 1144, 1148 (E.D. Mich. 2002) (holding that "[a] defendant's failure to comply with the thirty-day limitation set forth in Section 1446(b) is an absolute bar" and finding that "the Government's removal of this

---

[8] <u>See also, e.g.</u>, <u>Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.</u>, 989 F.2d 1256 (1st Cir. 1993) (holding § 1442 is designed to allow federal officers to remove actions that otherwise would be unremovable).

case was not timely" on that ground); Adams v. W. Steel Buildings, Inc., 296 F. Supp. 759, 761 (D. Colo. 1969) ("It appears conceded, and properly so, that the procedural requirements of section 1446, specifically the thirty day time limitation of subsection (b), are applicable to actions removed under section 1442(a)(2) on federal officers as well as to those removed under the general statute.").

In sum, this case was initially removable under § 1442(a)(1), TVA's Notice of Removal was untimely under § 1446(b)(1), and late removal under § 1446(b)(3) was unavailable.

C.    TVA is Not Entitled to the "Revival Exception" to Cure Its Noncompliance with § 1446

TVA seeks the rarely-granted "revival exception" to the 30-day requirement of § 1446. The revival exception was discussed and used in Cliett v. Scott, 233 F.2d 269, 271 (5th Cir. 1956), was given a name in Wilson v. Intercollegiate (Big Ten) Conf. Athletic Assoc., 668 F.2d 962 (7th Cir. 1982) (declining to apply), and was most-notably utilized in Johnson v. Heublein, 227 F.3d 236 (5th Cir. 2000). Under this judicially-created exception, a defendant might theoretically be allowed to "revive" the original removal period under § 1446 "where the plaintiff files an amended complaint that so changes the nature of [the] action as to constitute substantially a new suit begun that day." Wilson, 668 F.2d at 965. Johnson appears be one of a few modern cases of real note where a court has affirmatively relied upon the revival exception. There, the court applied the revival exception because new and more complex allegations in the amended complaint bore "no resemblance whatsoever" to allegations in original complaint and the original parties were realigned in a completely different manner. Johnson, 227 F.3d at 242. Both Wilson and Cliett relied upon Henderson v. Midwest Ref. Co., 43 F.2d 23 (10th Cir. 1930). In Henderson, the amended complaint changed the legal theory of the action from one seeking purely equitable relief

for title to property to one seeking damages at law resulting from a fraudulent conspiracy. Id. at 24. The Court described it as "an abandonment of the original for a new cause of action." Id. at 25.

The Sixth Circuit (like many other circuits) has not even considered the revival exception. ACR Dealer Funding, L.L.C. v. Auto Brokers USA Corp., Civil Action No. 3:17-cv-00083-CRS, 2017 WL 1416823, at *2 (W.D. Ky. Apr. 19, 2017). But our Court of Appeals has held that the "strict time requirement for removal in civil cases is not jurisdictional; rather, it is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness has not been waived."[9] Seaton v. Jabe, 992 F.2d 79, 81 (6th Cir. 1993) (citations omitted); see also Mays v. City of Flint, Mich., 871 F.3d 437, 442 (6th Cir. 2017) (holding removal statutes are to be strictly construed against removal); City of Albion v. Guar. Nat'l Ins. Co., 35 F. Supp. 2d 542, 544 (W.D. Mich. 1998) ("Although not jurisdictional, the thirty-day period for removal is mandatory and must be strictly applied."). A court in this district has specifically noted that the "thirty-day rule" has two purposes: "On the one hand it forecloses a defendant from adopting a 'wait and see' approach in the state court; specifically, it prevents a second bite at the jurisdictional apple if a defendant (belatedly) perceives that the case is proceeding other than to his liking . . . On the second hand, the statutory requirement minimizes the delay and waste of resources involved in starting a case over in federal court after substantial proceedings have taken place in state court." Brown v. N.J. Mfrs. Ins. Group, 322 F. Supp. 2d 947, 950 (M.D. Tenn. 2004) (citing Nasco, Inc. v. Norsworthy, 785 F. Supp. 707, 710 (M.D. Tenn. 1992)). Several other sister courts have held that "all rules governing removal [are] to be strictly interpreted" because removal "encroaches on

---

[9] In Bartholomew v. Town of Collierville, 409 F.3d 684, 685 (6th Cir. 2005), abrogated on other grounds by Warthman v. Genoa Twp Bd. of Tr., 549 F.3d 1055 (6th Cir. 2008), the court noted, without discussion, that the district court had remanded a second amended complaint as untimely removed where the first amended complaint was removable.

state jurisdiction." <u>Bostic v. Biggs</u>, 2017 WL 160786, at *2 (M.D. Tenn. Jan. 13, 2017) (collecting cases); <u>see also</u> <u>Mitchell v. Lemmie</u>, 231 F. Supp. 2d 693, 697 (S.D. Ohio 2002) (citing <u>Brierly v. Alusuisse Flexible Packaging, Inc.</u>, 184 F.3d 527, 534 (6th Cir. 1999)); <u>Bearup v. Milacron</u>, 2002 WL 482548, *3 (E.D. Mich. Feb. 28, 2002). Courts within this circuit have also specifically questioned the validity of exceptions to § 1446. <u>See, e.g.</u>, <u>Gray v. Martin</u>, Civil No. 13-73-ART, 2013 WL 6019335 at *3 (E.D. Ky. 2013) (describing the revival exception as "a questionable doctrine"); <u>see also</u> <u>Zipline Logistics, LLC v. Powers & Stinson, Inc.</u>, No. 2:15-cv-693, 2015 WL 4465323, at *5 (S.D. Ohio July 21, 2015) (noting that plaintiffs "bear the burden of demonstrating that all procedural requirements set forth in § 1446 have been satisfied" and limiting application of exceptions to unanimity requirement in § 1446(b)(2)(A)). TVA has not presented any Sixth Circuit or Tennessee federal court cases granting the revival exception.[10]

An in-depth analysis of the lack of substantial justification for the revival exception was offered by Chief Judge Steele in the Southern District of Alabama. <u>See</u> <u>Tucker v. Equifirst Corp.</u>, 57 F. Supp. 3d 1347, 1349-58 (S.D. Ala. 2014). After performing an extensive statutory construction analysis, Judge Steele concluded:

---

[10] TVA cites to <u>Winners Corp. v. Lafayette Life Ins. Co.</u>, 734 F. Supp. 812, 814 (M.D. Tenn. 1989), for the proposition that the 30-day time limit "'is not jurisdictional; it is merely remedial and formal and may be waived.'" (Doc. No. 19 at 12.) A careful reading of <u>Winners</u>, however, reveals that Judge Nixon was merely making the point that even if a case was improvidently removed, the district court might retain jurisdiction if the opposing party did not timely move to remand. 734 F. Supp. at 814. The court denied the motion to remand because it was untimely filed, not because the case was necessarily properly removed (and, in fact, the Court implied that the motion to remand would have been successful if timely filed). <u>Id</u>. at 814-15. Here, the motion to remand was timely filed; <u>Winners</u> is of little use to TVA.

> [T]he ordinary meaning of "civil action" is a single proceeding begun with a complaint and continuing all the way through entry of judgment. There is not the slightest indication that Congress in the removal statutes used the term in any other sense, and under general rules of statutory construction the courts are required to give the term its ordinary meaning. The Court has been made aware of no colorable argument to the contrary. Because the filing of an amended complaint is an act or event occurring between commencement and judgment, it is part of a single, ongoing civil action and cannot commence a new "civil action" under Section 1446(b)(1).

Id. at 1354. The court then found that: "the language of Section 1446(b)(1) unambiguously precludes judicial recognition of a revival exception. Creating an exception to removal deadlines that is neither expressed in the removal statutes nor clearly implied from them does not serve the interests of federalism and does not honor the direction to strictly construe statutory removal procedures." Id. In reaching this result, the court also engaged in a lengthy consideration of the few cases usually offered in support of the exception, which are again offered here by TVA. The court found that (1) Wilson simply assumed that an exception existed and cited several unpersuasive cases, and (2) Johnson merely cited Wilson and Cliett.[11] As to the latter, the court explained that Johnson's statement on the exception is essentially passing dicta and Cliett has been an outlier for the last sixty years. In the words of the court:

---

[11] TVA cited only two cases in its Notice of Removal in support of its assertion of the revival exception, Cliett and Hearst Corp. v. Shopping Ctr. Network, Inc., 307 F. Supp. 551, 555 (S.D.N.Y. 1969), which cited to Cliett. (Doc. No. 1 at ¶ 15.)

> Th[is] . . . explains why the [c]ourt cannot give weight to the declarations of the Fifth and Seventh Circuits that a revival exception exists. Neither they nor the authorities on which they rely offer any justification for such an exception beyond misconstructions . . . flawed extrapolations . . . and unexamined acceptance of what prior authorities (often in dicta) themselves accepted without examination – all apparently stemming from a vague sense that defendants deserve a more relaxed removal standard than Congress has provided. . . . As long ago as 1898, the Supreme Court declared that the removal statute must be construed as, "in intention and effect, permitting *and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case* in the court in which it was brought." Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 100-01 (1898) (emphasis added). A revival exception would directly contradict this reading of the statute, allowing removal long after the action was first removable. No known case discussing the revival exception has sought to reconcile the exception with Powers.

Id. at 1357. The court concluded that the revival exception does not exist in, and would not be recognized by, the Eleventh Circuit. Id. at 1358.

Many other courts have either ignored the revival exception or viewed it with a highly skeptical eye. See, e.g., Nickle v. Israel, No. 14-62952-CIV, 2015 WL 417828 at *2 (S.D. Fla. Jan. 30, 2015) (recognizing that the Eleventh Circuit has not endorsed revival exception); Daggett v. Am. Sec. Ins. Co., No. 2:08-cv-46-FtM-29DNF, 2008 WL 1776576 at *3 (M.D. Fla. 2008) ("The [c]ourt doubts that a revival exception can be read into the clear dichotomy set forth in § 1446(b). Either a case is removable based on the initial pleading or it is not. If it is removable, defendant must do so within thirty days. Subsequent conduct can only affect removability if the case was not originally removable."); Williams v. EDCare Mgmt, Inc., No. 1:08-CV-278, 2008 WL 4755744 at *8 (E.D. Tex. 2008) ("If a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b); subsequent events do not make it 'more removable' or 'again removable.'"); Ray v. Trimpspa Inc., No. CV 06-6189 AHM (VBKx), 2006 WL 5085249 at *3-4 (C.D. Cal. 2006) ("[T]he revival exception is a doctrine of dubious application in light of

the strict construction this court must accord to the removal statutes."); <u>Dunn v. Gaiam, Inc.</u>, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001) ("[G]iven the strict construction which the [c]ourt must apply to the removal statutes, on procedural as well as substantive issues, the wisdom of such a judicially-created exception might be questioned as an initial matter."); <u>Black v. Brown & Williamson Tobacco Corp.</u>, No. 4:05CV01544 ERW, 2006 WL 744414 at *3 (E.D. Mo. 2006) ("A defendant who fails to remove within the thirty-day period waives the right to remove at a later time. A defendant waiving removal on the initial petition does not regain the opportunity to remove the matter based on subsequent events."); <u>Sehl v. Safari Motor Coaches, Inc.</u>, No. C 01-1750 SI, 2001 WL 940846, *4 (N.D. Cal. Aug.13, 2001) ("[S]ince [defendant] failed to remove the case within thirty days of the original complaint, which was removable at that time, [defendant] thereby waived its right to file a subsequent removal even though the complaint was amended to create a new basis for removal."); <u>Burke v. Atl. Fuels Mktg. Corp.</u>, 775 F. Supp. 474, 477 (D. Mass. 1991) (describing the revival exception as a "judicial gloss" and strongly suggesting that certain clarifying amendments to the removal statutes "rejected the rule of those cases"); <u>Samurai v. Kaiser Found. Health Plan, Inc.</u>, 715 F. Supp. 970,972 (N.D. Cal. 1989) (holding that changes to a complaint that create a new basis for removal do not undo the original waiver; "[i]f a case is removable from the outset, it must be removed within the initial thirty-day period specified by § 1446(b)[, and] subsequent events do not make it 'more removable' or 'again removable'"); <u>Hubbard v. Union Oil Co. of California</u>, 601 F. Supp. 790 (S.D.W.Va. 1985) (concluding that it would frustrate the purpose of §1446(b) if a defendant "were allowed to decline to remove a case upon one ground and then, later in the litigation, attempt to remove the case when a second ground for removal presented itself").

This persuasive authority raises substantial questions as to (1) whether the revival exception is even recognized in this circuit, and (2) whether the Court should entertain TVA's revival exception argument. However, out of an abundance of caution, and given that some courts and a leading learned treatise do acknowledge the existence of the doctrine, see 14B FED. PRAC. & PROC. JURIS. § 3731, the Court has considered whether TVA could have a claim to the exception here. Based on the state of the law, however, obtaining the exception would be a Herculean accomplishment. Courts have repeatedly stated that they can find very few cases in which the high bar for the exception has been met. Tucker, 57 F. Supp. 3d at 1358; Dunn, 166 F. Supp. 2d at 1279. Put simply, over the years numerous courts have declined to apply the revival exception in a variety of circumstances. See, e.g., Nickle, 2015 WL 417828, at *2 (declining to apply revival exception after finding addition of claims against sheriff's office after four years did not "fundamentally alter" the nature of false arrest case/malicious prosecution case against individuals); Eminence Inv'r L.L.L.P. v. Bank of N.Y. Mellon, 24 F. Supp. 3d 968, 980 (E.D. Cal. 2014) (rejecting revival exception where claims went from being on behalf of 25% of bond holders to 100% of bond holders and potential damages increased by $6 million); Flora v. Luzerne Cnty. of Penn., No.3:13-1478, 2013 WL 4520854 (M.D. Pa. Aug. 26, 2013) (declining to apply revival exception where the amended complaint involved new parties, alleged claims different from those set forth in the original complaint, significantly increased the purported class, and increased the defendants' potential liability); Cancel v. Sewell, Civil Action No. 5:10-cv-273 (CAR), 2011 WL 240132, at *5 (M.D. Ga. Jan. 24, 2011) (rejecting revival exception where plaintiff added a retaliatory termination claim five years into a False Claims Act case); Valley Mgmt, Inc. v. Boston Road Mobile Home Park Tenants Ass'n, 736 F. Supp. 2d 344, 350-51 (D. Mass. 2010) (declining to apply revival exception where plaintiff added new claims under civil rights statutes that might

create exposure to greater damages because underlying allegations still revolved around discrimination); <u>City of Kenner v. Un. Fire and Cas. Co.</u>, Civil Action No. 07-2678, 2007 WL 2177781, at * 2 (E.D. La. July 30, 2007) (rejecting the revival exception because "[t]he amended pleading did not add or dismiss any defendants nor did it change the legal issues raised in the original pleading . . . nor did [it] result in a realignment of the existing parties to this action"); <u>Disher v. Citigroup Global Markets, Inc.</u>, 487 F. Supp. 2d 1009, 1021 (S.D. Ill. 2007) (acknowledging revival exception but declining to apply it where the underlying factual predicate for the claims asserted in both plaintiff's original complaint and his amended complaint was "the misrepresentation or omission of material facts by [defendant] . . . in connection with purchases or sales of covered securities"); <u>Warren v. State Farm Mut. Auto. Ins. Co.</u>, No. 06-15054, 2007 WL 1267579 at *5 (E.D. Mich. Apr. 30, 2007) (rejecting revival exception where the case was essentially "a continuation" of the original action and the court wished to reduce the potential for "judge shopping"); <u>Doe v. Florida Int'l. Univ. Bd. of Tr.</u>, 464 F. Supp. 2d 1259, 1260-61 (S.D. Fla. 2006) (declining to apply revival doctrine where plaintiff added federal civil rights claim as well as new state law claims for negligence and sexual assault because, because while the allegations in the amended complaint differed "somewhat" from the original action, they still encompassed the same essential underlying conduct); <u>Samuels v. Allstate Ins. Co.</u>, No. Civ.A.05-2490 KHV, 2006 WL 449257, *4 (D. Kan. Feb. 23, 2006) ("Although the amended claims will require additional evidence and different burdens of proof, this difference is not so substantial as to afford defendants a new opportunity to remove."); <u>Ray</u>, 2006 WL 5085249, at *4 (declining to grant exception where amended complaint merely added different claims under the same underlying law); <u>Dunn</u>, 166 F. Supp. 2d at 1279-80 (no revival allowed even though the new suit added five defendants and a cause of action under the Racketeer Influenced and Corrupt

Organizations Act because "the case remained, at base, a contract action"); Tully v. Am. Fed. of Gov't Emp. Local 3148, No. 00-cv-7664(JG), 2001 WL 253034, at *2 (E.D.N.Y. Mar. 9, 2001) (rejecting exception because "[t]he basic legal theory of plaintiff's action . . . remains unchanged"); McKenna v. Brassard, 704 F. Supp. 309, 312 (D. Mass. 1989) (noting that for an amended claim to give rise to a new removal right, it must do more than assert a new legal theory based on the same facts, and rejecting revival exception even though the first complaint presented a "personal injury" action while the amended complaint presented a "wrongful death" action with a "measure of damages [that was] different" as well as an "added allegation that the cause of [the plaintiff]'s death was a neurological disorder caused by the accident"); Clarson v. S. Gen. Life Ins. Co., 694 F. Supp. 847, 848 (M.D. Fla. 1987) (in ERISA case, finding, "given defendant's voluntary submission to state court jurisdiction on the [original] complaint," that substitution of a plaintiff and adding causes of action including failure to provide conversion privilege and failure to pay life insurance benefits were insufficient to trigger the revival exception); Wilson, 668 F.2d at 965 (in case usually credited with "naming" the exception, declining to apply it because the plaintiff still sought monetary and injunctive relief, still had the same underlying legal theories, and did not abandon his original causes of action). Adams, 296 F. Supp. at 762 (noting that "[t]o be sure, there are differences" between the complaints, but concluding that, "[c]onsidering the nature of the present case as a whole, we are able to perceive of no differences which would make it unjust to require defendants who consented to state court jurisdiction on warranty claims and filed motions in that forum going to the merits of such claims, to also submit to that jurisdiction as to negligence claims arising out of the same factual situation and seeking relief for the same alleged damages").

Here, the State has not abandoned its original case or twisted it into some fundamentally unrecognizable creature. This case still encompasses the same laws, and it remains, at base, a state

environmental regulatory enforcement action against a federal agency. While the amended complaint presents new facts, they concern the same essential underlying subject matter as those in the original complaint – i.e., actions by TVA at the Gallatin Plant and attendant compliance responsibilities. The parties remain the same. The original claims remain. The state regulatory and permitting frameworks remain the same. The types of alleged violations generally remain the same (i.e., TWQCA, SWDA, NPDES Permit). While the amended complaint now places Pond A and Pond E under the rubric of the SWDA as opposed to the TWQCA, the addition of that claim, in the court's estimation, has not created a "substantially new suit." The new "SWDA cause of action" incorporates many the same factual contentions and makes an underlying demand – that TVA comply with the state environmental regulatory regime – that parallels other claims in the case. While the filing of the amended complaint is surely not as "minor" an event as the State claims, the Court does not find it unjust for TVA to be expected to submit to state court jurisdiction on the augmented SWDA claims, particularly if factual developments have made appropriate a change in the categorization of Ponds A and E under the relevant state regulations.[12] Put simply, while there may be changes as to evidentiary requirements, discovery requirements, and a need for additional motion practice, the State's amended complaint is "not so drastic that the purposes of

---

[12] The original complaint contained allegations related to the Ash Pond Complex, including that TVA was in violation of the TWQCA and the NPDES Permit at the Ash Pond Complex. (Doc. No. 18-1, Ex. 1 at ¶¶ 17, 52-53.) TVA argues that they are being confronted with "a new legal theory" that, because Ponds A and E will no longer be in use, they will not be covered by the NPDES Permit and will be regulated under the SWDA. (Doc. No. 19 at 17.) While the formal application of the SWDA to Ponds A and E in the amended complaint and permitting process may be "new" in the sense that it was not necessitated until the actual disuse of Ponds A and E, the *theory* of regulation of Ponds A and E under the SWDA cannot be *new* to TVA because when other ponds at the Gallatin Plant were previously closed, they (as part of the Non-Registered Site) became subject to regulation under the SWDA. So the idea of the potential regulation of disused Ponds A and E under the SWDA simply cannot have been an alien concept to TVA.

the 30-day limitation would not be served by enforcing it." Doe, 464 F. Supp. 2d at 1262. Nor does the potential for additional damages or equitable relief as a result of the amended complaint change the basic nature of this case.[13] See, e.g., McKenna, 704 F. Supp. at 312 ("A change in the amount of damages sought . . . does not give rise to a new removal right."); Potty Pals, Inc. v. Carson Fin. Grp., Inc., 887 F. Supp. 208 (E.D. Ark. 1995) (holding that "[a]dding the request for an injunction did nothing to create a new basis for removal" under revival exception). Accordingly, the Court finds that the amended complaint is merely a continuation of the ongoing, years-long action between the parties. Compare with, e.g., MG Bldg. Materials, Ltd. v. Paychex, Inc., 841 F.Supp.2d 740, 747-48 (W.D.N.Y. 2012) (citing Wilson and granting exception where what began as a lawsuit by two plaintiffs "alleging that Paychex's failure to make timely and adequate tax payments on behalf of MG and Excellence had caused [them] to incur some $162,000 in penalties" later "morphed into a class action, potentially involving thousands of class members across the country, while the damage claims [grew] to a whopping $15 billion, an increase of over nine million percent"); Stewart v. EGNEP (Pty) Ltd., 581 F. Supp. 788, 790 (C.D. Ill. 1983) (citing Wilson and Cliett and allowing exception where case changed from demand for information concerning deposits of judgment debtors to an in personam judgment for $56 million).

---

[13] TVA argues that the amended complaint, if successful, would have the effect of "circumventing the permit appeal process established by the Tennessee legislature under Tenn. Code Ann. 69-3-105(i)." (Doc. No. 19 at 3.) It appears that the interplay of this litigation and the permitting process has always been an issue, and it will continue to be so. TVA is obviously not a novice at the permitting process, and that process will continue. TVA may now have new substantive arguments about what the State is trying to accomplish and how it is trying to accomplish it. TVA will have motion practice and permit appeals available to it and the Court will not pre-judge the merits of those arguments in determining the issue of remand. Suffice it to say that the Court does not agree with the broad claim that this case is now entitled to be removed on the simple ground that the Gallatin Plant may end up more strictly regulated than originally anticipated.

Furthermore, although it gave name to the revival exception, <u>Wilson</u> wisely stated that the effect of amendments to suit should be carefully measured against the purposes of the removal statute. 668 F.2d at 966. And, indeed, this case illustrates very nicely the purposes behind the 30-day limitation in the removal statute. Removal to federal court years after the original complaint has been filed and substantial proceedings – arguably unfavorable to the defendants – have taken place in the state courts interrupted an active litigation, thus reducing judicial economy, and likely delivered an unearned tactical advantage into the hands of TVA. Given the obvious timing of events, it is just as possible that TVA removed this case because it was doing badly in the state court than because it felt that the amended complaint confronted it with such a different case from the one it had been fighting in that courts. As the Seventh Circuit explained, when declining to apply the very exception it had set forth, a "kind of sensitivity is [ ] required of federal courts . . . sensitivity to the danger of encroaching unduly on the authority of the state courts." <u>Wilson</u>, 668 F.2d at 966. This case illustrates that danger. State law regulatory claims that began by being litigated in the state court system, arguably favorably to the plaintiffs up to this point, could have ended up being decided unfavorably to the plaintiffs by a federal court. "[T]he district courts, in interpreting and applying section 1446(b), should bear in mind, and where possible avoid, the frictions in a harmonious federal system that result when litigation involving state law . . . issues is abruptly shifted into federal court and the state proceedings . . . are set at naught."[14] <u>Id</u>.

---

[14] The Court need not mention any other arguments, save one. The Court does not credit TVA's argument that this Court is more familiar with this case by virtue of having heard the related federal case. First, the state court had this matter before it for nearly three years and ruled on summary judgment, and so the claim that the state court has only a passing familiarity with this case is dubious. <u>See</u> <u>Warren</u>, 2007 WL 1267579, at *6 (noting "long history" of thirteen months before state court, concluding that "it is appropriate for this matter to be maintained in state court before the same judge who is fully familiar with the facts and parties in this case," and remanding). Second, this Court excluded matters involved in the state action from the federal litigation. Finally, the federal court case ended prior to some of the developments that gave rise

For all these reasons, TVA is not entitled to the benefit of the revival exception to § 1446. This action must, therefore, be remanded to the Chancery Court pursuant to the removal statute.

D.   Attorney's Fees

Finally, the Citizens Groups request, without any supporting documentation, an award of attorney's fees under 28 U.S.C. § 1447(c), which provides that a court may award fees and costs when remanding a case. The Supreme Court has interpreted this clause to mean that fees and costs should only be awarded "where the removing party lacked an objectively reasonable basis for seeking removal," and denied "when an objectively reasonable basis exists[.]" Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). While the Court has found TVA's arguments to be without merit, it does not conclude that they were so objectively unreasonable under the law as to necessitate departure from the American rule.[15] See, e.g., Eminence Inv'r L.L.L.P., 24 F. Supp. 3d at 980 (rejecting revival exception but declining to award attorney's fees because the court could not "say it was unreasonable" to seek application of the exception); Samuels, 2006 WL 449257, at *4 (denying attorney's fees even though revival exception was declined). Accordingly, the Court, in its discretion, will deny this request.

III.   Conclusion

The initial complaint fairly apprised TVA of the nature of this litigation. TVA consented to have this case tried in the state courts by not timely seeking removal. To allow revival of the right to remove based on the amended complaint would undercut the 30-day limitation period

---

to the amended complaint. Accordingly, this court is no more familiar with the amended complaint than the state court.

[15] The Court also notes that the State and Citizens Groups filed two remand motions and frequently duplicative motion briefs and reply briefs. Cooperation in this effort might have saved some fees. Regardless, it was the Citizens Groups' decision to file their own motion and briefs on top of the State's motion and briefs.

without serving the policy behind the revival exception, if that exception is viable as a matter of law, because the changes that have occurred have not sufficiently altered this litigation. Accordingly, remand is proper. The Motions to Remand (Doc. Nos. 12, 14) will be granted, and this case will be remanded to the Chancery Court. The Citizens Groups' incorporated request for attorney's fees will be denied.

The Court will enter an appropriate Order.


_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE